# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STERICYCLE, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 16 C 4782 |
| DONALD SIMOTA, DANA SULLIVAN, and CHAD VAN HOUTEN, | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The allegations in this suit follow the pattern familiar in restrictive covenant cases: former employee leaves to work for a competitor, takes confidential files with him, and then solicits other employees and customers to join him at his new company. The setting here is Las Vegas and Plaintiff Stericycle, Inc. ("Stericycle") is the employer who alleges foul play. Donald Simota, Dana Sullivan, and Chad Van Houten ("the defendants") are the former employees who allegedly joined a competitor—Patriot Environmental Services, Inc. ("Patriot")—and took Stericycle information and customers with them, in violation of their contractual and fiduciary duties. The defendants have filed a partial motion to dismiss Stericycle's breach of contract claims (Counts I-IV) under Federal Rule of Civil Procedure 12(b)(6), arguing that even though their employment agreements contain restrictive covenants that mandate, among other things, that whatever happens at Stericycle stays at Stericycle, those covenants are unenforceable due to a lack of adequate consideration. The Court disagrees and finds that the defendants' roughly thirteen months of employment and Simota's grant of stock options were sufficient consideration under Illinois law to support their restrictive covenants. As a result, all four of Stericycle's contract claims survive dismissal and the Court denies the defendants' partial motion to dismiss.

**BACKGROUND**

For purposes of this Rule 12(b)(6) motion, the Court must treat the following facts asserted in Stericycle's complaint as true. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (citing Fed. R. Civ. P. 12(b)(6)). Stericycle is in the medical and waste management business and offers hazardous waste emergency response services. (Compl. ¶¶ 14-15, ECF No. 1.) In January 2015, Stericycle acquired (through an indirect subsidiary) Double Barrel Environmental Services, LLC ("Double Barrel") to expand its hazardous waste emergency response business. (*Id.* ¶ 27.) At the time of the acquisition, the defendants were employed by Double Barrel in its Las Vegas office; Simota was the Southern Nevada Operations Manager, Van Houten was a Project Manager, and Sullivan was an Office Administrator. (*Id.* ¶¶ 23-25.) Following the acquisition, all three defendants became employees of Stericycle and fulfilled substantially the same roles that they had with Double Barrel. (*Id.* ¶¶ 27, 30.)

The following month, between February 15 and 18, 2015, the defendants entered into nearly identical Confidentiality and Nonsolicitation Agreements with Stericycle (the "Nonsolicitation Agreements"). (Compl. ¶¶ 32-34, 36.) The agreements bar the defendants from disclosing to third parties or using for their own purposes any of Stericycle's confidential information or trade secrets. (*Id.* ¶ 42.) They also prohibit the defendants from soliciting any Stericycle customers or employees for a period of twelve months following their termination from the company. (*Id.* ¶¶ 40-41.) The Nonsolicitation Agreements state that Stericycle offered "employment" to the defendants in consideration for these covenants. (Nonsolicitation Agreements 1, Exs. D-F, ECF Nos. 1-4 to -6.) That employment was on at-will basis. (Employee Confirmation Letters, Ex. C, ECF No. 1-3.)

Simota also signed an Employee Covenant Agreement on April 1, 2015 (the "Covenant Agreement"), which contained nearly identical nondisclosure and nonsolicitation restrictions as

the Nonsolicitation Agreements. (Compl. ¶¶ 35-36.)[1] It also contained an additional restriction that barred Simota from working for a Stericycle competitor for a period of twelve months after he left the company. (*Id.* ¶¶ 37-39.) According to the Covenant Agreement, Stericycle granted Simota "an option to purchase shares of Stericycle common stock . . . pursuant to an option agreement dated the same date as [the Covenant Agreement]" in consideration for these restrictions. (Covenant Agreement 1, Ex. G, ECF No. 1-7.)[2]

The defendants worked for Stericycle until March 2016. While employed by Stericycle, all three defendants had access to and became familiar with the company's confidential information and trade secrets. (Compl. ¶ 43.) They also cultivated relationships with Stericycle customers and worked to develop new business. (*Id.* ¶ 45.) On March 4, 2016, Simota resigned his employment with Stericycle. (*Id.* ¶ 46.) Although he gave two weeks' notice, he announced his last day one week later, on March 11, 2016. (*Id.*) Van Houten resigned on or around March 9, 2016, but announced his last day on March 11, 2016 as well. (*Id.* ¶ 47.) Sullivan resigned on or around March 8, 2016, and stayed on with Stericycle until March 22, 2016. (*Id.* ¶ 48.)

Shortly after leaving Stericycle, the defendants began working for Patriot, one of Stericycle's competitors in the hazardous waste emergency response business. (Compl. ¶¶ 1, 49.) All three defendants took on the same or substantially similar positions at Patriot that they held at Stericycle. (*Id.* ¶¶ 50-51.) As they left Stericycle, Simota and Sullivan took confidential information with them, including detailed information pertaining to Stericycle's customers and

---

[1] The Nonsolicitation Agreements and Covenant Agreement also contain choice of law provisions that state that Illinois law governs any dispute over the validity, interpretation, performance, enforcement, or remedies of or regarding the agreements and forum selection clauses requiring suits between the defendants and Stericycle to be litigated in either state or federal court in Lake or Cook County, Illinois. (Nonsolicitation Agreements §§ 7, 11, Exs. D-F; Covenant Agreement §§ 9, 13, Ex. G.)

[2] The terms of the option agreement are not set forth in the complaint. Nor is the agreement included as an exhibit to the complaint.

pricing. (*Id.* ¶¶ 55-60.) Moreover, the defendants informed Stericycle customers about their move to Patriot and solicited at least one Stericycle employee to join Patriot. (*Id.* ¶¶ 61-68.)

On March 30, 2016, Stericycle sent letters to the defendants reminding them of their post-employment obligations and demanding compliance with their covenants. (*Id.* ¶ 69.) Shortly after the defendants responded to those letters on April 8, 2016, Stericycle filed suit. (*Id.* ¶¶ 70-73.) Among other counts in its complaint, Stericycle asserts that the defendants have breached the restrictive covenants in their Nonsolicitation Agreements and Covenant Agreement, as well as their fiduciary duties to Stericycle, and seeks damages and injunctive relief. (*Id.* ¶¶ 74-113.) In May 2016, following a hearing, the Court entered a temporary restraining order enjoining the defendants from soliciting Stericycle customers and employees for a twelve-month period and barring defendants from using or disclosing Stericycle's confidential information or trade secrets. (TRO 2-4, ECF No. 21.) Two months later, in July 2016, the defendants filed a motion to dismiss Stericycle's breach of contract claims (Counts I-IV). (Defs.' Mot. to Dismiss, ECF No. 42.)

## DISCUSSION

To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court "must accept as true all factual allegations in the . . . complaint and draw all permissible inferences" in Stericycle's favor. *Id.* (quoting *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (internal quotation marks omitted)). However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, [it] still must

4

provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for [its] complaint to be considered adequate under [Rule] 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

The sole issue presented by the defendants' motion is whether the Nonsolicitation Agreements and the Covenant Agreement were supported by adequate consideration. The defendants argue that the consideration underlying the Nonsolicitation Agreements fails because it was based only on the promise of at-will employment, and because they worked for Stericycle for no more than thirteen months (not two years), their employment was insufficient as a matter of Illinois law to serve as consideration for a restrictive covenant. (Defs.' Mem. in Supp. of Mot. to Dismiss 3-4, ECF No. 43.) Simota argues that his Covenant Agreement also lacked sufficient consideration because it was supported only by an illusory grant of options that never vested or resulted in a payout. (*Id.* at 4.) Stericycle contends that the defendants were employed for a "substantial period" under Illinois law in light of their voluntarily resignation from Stericycle, and thus the Nonsolicitation Agreements are enforceable. (Pl.'s Resp. in Opp'n to Mot. to Dismiss 8-11, ECF No. 47.) With regard to the Covenant Agreement, Stericycle argues that the options served as adequate consideration regardless of whether they vested. (*Id.* at 5-7.) The Court addresses the two different agreements in turn and finds that both are supported by sufficient consideration.

I. **The Defendants' Nonsolicitation Agreements (Counts I, III, IV)**

Because the defendants resigned from Stericycle after about thirteen months of continued employment to work for a competitor, the Court finds that there is enough consideration to enforce the Nonsolicitation Agreements. A contract is enforceable under Illinois law whenever there is an exchange that includes an offer, acceptance, and consideration. *All Am. Roofing, Inc.*

*v. Zurich Am. Ins. Co.*, 404 Ill. App. 3d 438, 449, 934 N.E.2d 679, 689 (1st Dist. 2010) (citation omitted). "Consideration is defined as a bargained-for exchange whereby one party receives a benefit or the other party suffers a detriment." *Id.* (internal quotation marks and citation omitted).

Generally, Illinois courts do not examine the adequacy of consideration; they merely verify its existence. *Prairie Rheumatology Assocs., S.C. v. Francis*, 2014 IL App (3d) 140338, ¶ 14, 24 N.E.3d 58, 62 (citation omitted); *see also Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 48, 17 N.E.3d 822, 837 ("It is not [the] court's function to review the amount of consideration unless the amount is so grossly inadequate as to shock the conscience . . . .") (citation omitted). When analyzing postemployment restrictive covenants, however, courts depart from the traditional rule. *McInnis v. OAG Motorcycle Ventures, Inc.*, 2015 IL App (1st) 142644, ¶ 27, 35 N.E. 3d, 1076, 1082-83. They do so based on the recognition that "a promise of continued employment may be an illusory benefit where the employment is at-will." *Id.*; *accord LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 743 (N.D. Ill. 2011) ("The minute after [the employee] signed the covenant not to compete, [the employer] could have fired him and then he would have had received nothing in exchange for the fresh promise represented by his signing of a new contract.") (quoting *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 946 (7th Cir. 1994)). To address this issue, and avoid the need to investigate the employer's intentions, Illinois courts require that consideration based on at-will employment continue for a "substantial period" after an employee signs a restrictive covenant. *McInnis*, 2015 IL App (1st) 142644, ¶ 27, 35 N.E. 3d at 1083; *see also Cumulus Radio Corp. v. Olson*, 80 F. Supp. 3d 900, 905-06 (C.D. Ill. 2015) (citing *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 152, 847 N.E.2d 99, 109 (2006)); *LKQ Corp.*, 785 F. Supp. 2d at 743 (discussing how the "substantial period" requirement creates "an

irrebuttable presumption that if the employee was fired shortly after he signed the covenant the consideration for the covenant was illusory") (citation omitted).

The crux of the dispute over the Nonsolicitation Agreements is whether Illinois now employs a bright-line rule that defines a "substantial period" as two years. Several recent Illinois appellate decisions appear to adopt such a rule, regardless of whether the former employee was terminated or resigned. *See McInnis*, 2015 IL App (1st) 142644, ¶¶ 32-35, 35 N.E.3d at 1083-85; *Prairie Rheumatology Assocs.*, 2014 IL App (3d) 140338, ¶¶ 15-16, 24 N.E.3d at 62-63; *Fifield v. Premier Dealer Servs., Inc.*, 2013 IL App (1st) 120327, ¶ 19, 993 N.E.2d 938, 943. The Illinois Supreme Court, however, has not addressed this issue. As such, this Court "must make a predictive judgment as to how [that court] would decide the matter if it were presented presently to that tribunal." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002) ("[T]he duty of the federal court, sitting in diversity, is to determine the content of state law as the highest court of the state would interpret it." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938))). For several reasons, the Court is convinced that the Illinois Supreme Court would reject a bright-line two-year rule and apply a fact-specific approach in assessing consideration.

For starters, Illinois courts applied a fact-specific approach prior to *Fifield*. In *McRand, Inc. v. van Beelen*, for example, the Illinois Appellate Court looked at the totality of the circumstances in determining that two former employees had worked for a substantial period following the signing of their restrictive covenants. 138 Ill. App. 3d 1045, 1055-56, 486 N.E.2d 1306, 1313-14 (1st Dist. 1985). Specifically, the court discussed how both defendants had received raises, bonuses, and increased responsibilities after signing their covenants, and also had voluntarily resigned. *Id.*; *see also Woodfield Grp., Inc. v. DeLisle*, 295 Ill. App. 3d. 935, 942-43, 693 N.E.2d 464, 469 (1st Dist. 1998) (suggesting in dicta that "[f]actors other than the

time period of the continued employment, such as whether the employee or the employer terminated the employment, may need to be considered to properly review the issues of consideration").

Although the First District of the Illinois Appellate Court appeared to abandon a fact-specific analysis in *Fifield*, *see* 2013 IL App (1st) 120327, ¶ 19, 993 N.E.2d at 943, it recently stated otherwise. In *McInnis,* the court expressly held that "*Fifield* did not abolish a fact-specific approach to determining adequacy of consideration" and that the analysis is not limited to "a numerical formulation." 2015 IL (1st) 142644, ¶¶ 35-36, 35 N.E.3d at 1084-85. The court went on to discuss with approval how the trial court examined whether additional factors besides length of employment (such as bonuses) provided sufficient consideration for the employee's covenant. *Id.* ¶ 36, 35 N.E.3d at 1085. Even so, the court made clear that the *Fifield* two-year rule applied in at least one instance: where at-will employment is the ***only*** basis for consideration. *McInnis*, 2015 IL (1st) 142644, ¶ 32, 35 N.E.3d at 1084 ("What *Fifield* clearly holds is that employment alone, which of less than two years duration, is inadequate consideration to support enforcement of a postemployment restrictive covenant.").

Neither *Fifield* nor *McInnis*, however, offers a persuasive reason to apply a bright-line rule even in such limited circumstances. At bottom, the rule is based on an observation that Illinois courts have generally held that two year or more of continued employment constitutes adequate consideration. *See Fifield*, 2013 IL App (1st) 120327, ¶¶ 14, 19, 993 N.3d.2d at 942-43. But just because two years of employment has been a sufficient basis for consideration, does not make it a necessary one. *See Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1108 (N.D. Ill. 2016) ("[S]aying that courts have generally found [two years] 'to be sufficient is very different than saying that anything less than two years is *automatically in sufficient.*'")

8

(quoting *McInnis*, 2015 IL App (1st) 142644, ¶ 61, 35 N.E.3d at 1089 (Ellis, J. dissenting)). *Fifield* also fails to explain why an employee's resignation is irrelevant to the issue of adequacy. As another federal district court has stated, *Fifield* and the cases it cites "contain near-identical language which is devoid of analysis: 'The fact that [the employee] resigned does not change our analysis.'" *Cumulus Radio Corp.*, 80 F. Supp. 3d at 908. None of the cases following *Fifield* offer an explanation either. *See Prairie Rheumatology Assocs.*, 2014 IL App (3d) 140338, ¶ 15, 24 N.E.3d, at 62; *McInnis*, 2015 IL App (1st) 142644, ¶ 35, 35 N.E.3d at 1085. As a result, Illinois appellate courts have provided little reason to write a two-year minimum into the substantial period analysis.

Indeed, the two-year rule does not logically follow from the rationale underlying the substantial period requirement. As discussed above, courts require a substantial period of continued employment to prevent an employer from locking an at-will employee into a restrictive covenant and then immediately terminating that employee. There is no reason why one year of employment (as opposed to two years) could not alleviate this concern under certain circumstances. *See LKQ Corp.*, 785 F. Supp. 2d at 744 (concluding that 12 months of at-will employment constituted "substantial period" where employee had resigned); *see also Allied Waste Servs.*, 177 F. Supp. 3d at 1109 (discussing how 15 months of employment could be adequate consideration depending on circumstances surrounding the employee's signing of the covenant, the conditions of his employment, and his termination). In other words, "there is nothing particularly significant about the term of 24 months that should elevate it to a per se minimum requirement." *Allied Waste Servs.*, 177 F. Supp. 3d at 1109 (quoting *McInnis*, 2015 IL App (1st) 142644, ¶ 61, 35 N.E.3d at 1089 (Ellis, J. dissenting)). More importantly, a two-year minimum effectively turns the purpose of the substantial period requirement "on its head."

9

*Cumulus Radio Corp.*, 80 F. Supp. 3d at 907. While the rule protects employees from the whim of its employers, it puts employers at the mercy of their employees: the "employee can void the consideration for any restrictive covenant by simply quitting for any reason." *Id.* at 907-08 (citing *Brown and Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 730, 887 N.E.2d 437, 442 (3d Dist. 2008) (Schmidt, J. dissenting)); *see also Apex Physical Therapy, LLC v. Ball*, No. 17 C 119-JPG-DGW, 2017 WL 3130241, at *3 (S.D. Ill. July 24, 2017) (discussing how employee could quit one day before "hitting the magical two year mark" to void restrictive covenant).

Finally, while the Illinois Supreme Court has not evaluated the *Fifield* rule, it has embraced a fact-specific approach for analyzing other aspects of restrictive covenants. In *Reliable Fire Equipment Co. v. Arredondo*, the court overruled appellate decisions that had applied a "rigid and preclusive" legitimate business interest test in assessing a covenant's reasonableness. 2011 IL 111871, ¶ 46, 965 N.E.2d 393, 404. In reaching that conclusion, the court reiterated the need to apply a test based "on the totality of the facts and circumstances of the individual case." *Id.* ¶ 43, 965 N.E.2d at 403. This Court believes that if faced with a question of consideration, the Illinois Supreme Court would apply the same reasoning and look to the totality of the circumstances to assess adequacy. In fact, a vast majority of Illinois federal district courts that have addressed this issue have predicted that the Illinois Supreme Court would apply such a flexible, fact-based approach. *See Apex Physical Therapy*, 2017 WL 3130241, at *2-3 (discussing how six of seven other Illinois federal courts have made same prediction in denying employee's motion to dismiss breach of covenant claim due to inadequate consideration).

In viewing the totality of the circumstances, the Court finds that Stericycle has pled adequate consideration for the Nonsolicitation Agreements. According to the complaint, the defendants continued to work for Stericycle for approximate thirteen months after signing those

agreements. (Compl. ¶¶ 32, 34-35, 46-48.) All three defendants then voluntarily left Stericycle together in March 2016 to join a competitor. (*Id.* ¶¶ 46-50.) Given the length of their employment and that all three resigned, the Court finds that the defendants' employment continued for a "substantial period" under Illinois law.[3] *See LKQ Corp.*, 785 F. Supp. 2d at 744; *see also Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 716 (N.D. Ill. 2014) (15 months of employment with resignation was substantial period); *Cumulus Radio Corp.*, 80 F. Supp. 3d at 909 (22 months of employment with resignation was adequate consideration).

The fact that the defendants signed their Nonsolicitation Agreements as part of Stericycle's acquisition of Double Barrel does not warrant a different conclusion. (*See* Defs.' Reply in Supp. of Mot. to Dismiss 3, ECF No. 50 (distinguishing *Montel* and other cases on basis that defendants were "already employed" with Stericycle before signing agreements).) Illinois courts have rejected the distinction between pre- and post-hire covenants when analyzing the adequacy of consideration. *McInnis*, 2015 IL App (1st) 142644, ¶ 40, 35 N.E.3d at 1086 (citations omitted); *Bires v. WalTom, LLC*, 662 F. Supp. 2d 1019, 1030 (N.D. Ill. 2009) (rejecting distinction while analyzing adequacy of consideration under Illinois law) (citing *Curtis 1000, Inc.*, 24 F.3d at 947.) And the defendants cite to no cases that hold otherwise. Therefore, the Court finds that dismissal of Counts I, III, and IV is inappropriate at this stage.

## II. Simota's Covenant Agreement (Count II)

The Court also declines to dismiss Count II because Stericycle sufficiently has pled consideration for Simota's Covenant Agreement as well. As an initial matter, it is not clear that the Court needs to examine whether the consideration at issue here—a grant of stock options—is

---

[3] Because the Court finds that the defendants' length of employment and voluntary termination alone support a finding of adequate consideration, it need not determine whether their access to Stericycle's confidential information and trade secrets constitutes adequate consideration. (*See* Pls.' Resp. 7-8.)

adequate. The defendants do not cite to any cases showing that Illinois courts depart from the traditional rule where stock options serve as consideration for a restrictive covenant, as opposed to at-will employment. Nonetheless, because the defendants do not raise an objection on this basis, the Court proceeds to consider whether the options are sufficient to support the restrictions set forth in the Covenant Agreement.

Simota argues that the options were inadequate because they never vested or resulted in a payout. (Defs.' Mem. 5.) In other words, he suggests that the options were an illusory benefit because they were tied to his at-will employment and Stericycle could have terminated him at any time before they vested. (*Id.*) Stericycle responds that several courts have found that stock options are adequate consideration for a restrictive covenant. (Pls.' Resp. 5-6.) Although Stericycle does not cite to any Illinois cases, the Court finds its citation to *Newell Rubbermaid Inc. v. Storm*, No. 9398-VCN, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014) to be instructive.

In *Newell*, the Delaware Chancery Court held that an employer's grant of restricted stock units ("RSUs") that were forfeited upon the employee's resignation served as adequate consideration for a nonsolicitation and confidentiality agreement. *Id.* at *1-2, *8-9. In so holding, the court considered and rejected the employee's argument that the RSUs were an illusory benefit—and thus inadequate consideration—because the employer could have terminated her at any time without cause, resulting in a forfeiture of the award. *Id.* at *9. The court recognized that the value of the RSUs was "somewhat contingent, based on certain factors such as the time period in which the units will vest and [the employee's] likelihood of future employment;" however, it still found that the RSUs had "actual value." *Id.* In support of its conclusion, the court discussed how there was little chance that the employer would fire the employee shortly

12

after she signed the restrictive covenant, as evidence showed that the RSUs were awarded as an incentive for her to remain with the company. *Id.*

Looking again at the totality of the circumstances, the Court concludes that the stock options served as adequate consideration for the Covenant Agreement. The Court agrees with *Newell* that options have actual value even though payout may be deferred for a period of time. Presumably Simota thought so as well, as the agreement he signed states that he was "voluntarily willing" to enter into the restrictive covenants in exchange for the options. (Covenant Agreement 1, Ex. G.) Moreover, akin to *Newell*, there are no allegations in this case that Stericycle was likely to terminate Simota shortly after he signed the agreement. Rather, it is reasonable to infer from the complaint that Stericycle had an incentive to retain Simota following its acquisition of Double Barrel in light of his experience managing Double Barrel's Las Vegas office and developing customers in the southern Nevada area. (*See* Compl. ¶ 23; Simota Confirmation Letter 1, Ex. C) ("[Stericycle is] excited about the knowledge and experience you [Simota] bring to the team and we look forward to your contributions in expanding upon our success as a leader in the environmental services industry.").) Finally, Simota's resignation from Stericycle also supports the conclusion that the options were adequate. If Simota were permitted to void such consideration by simply resigning, he would be turning the "judicially-crafted requirement for adequate consideration that is meant to shield employees into a sword that can potentially harm employers' legitimate business interests . . . ." *Cumulus Radio Corp.*, 80 F. Supp. 3d at 909. Therefore, because the complaint alleges sufficient consideration for Simota's Covenant Agreement, Count II survives the defendants' motion to dismiss as well.

\* \* \*

Accordingly, for the reasons stated above, the defendants' partial motion to dismiss Counts I-IV of Stericycle's complaint is denied.

Date: October 20, 2017

John J. Tharp, Jr.
United States District Judge